UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| NATIONAL LIABILITY & FIRE INSURANCE CO. : <br> : <br> and : <br> : <br> BOAT OWNERS ASSOCIATION OF THE : <br>    UNITED STATES : <br> : <br> Plaintiffs, : <br> : <br> v. : <br> : <br> : <br> NATHAN CARMAN : <br> : <br> Defendant. : | Civil Action No: 17- <br><br> In Admiralty |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiffs, NATIONAL LIABILITY & FIRE INSURANCE COMPANY ("National Liability") and BOAT OWNERS ASSOCIATION OF THE UNITED STATES ("BoatU.S."), by and through their attorneys, O'Leary Law Associates, as and for their complaint against defendant, NATHAN CARMAN ("defendant"), allege as follows:

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction over this matter under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, for the purpose of determining the question and actual controversy of the parties.

2. This Court has subject matter jurisdiction over this matter under the Admiralty and Maritime Jurisdiction of the United States District Court, 28 U.S.C. § 1333, because this matter concerns a contract of marine insurance on a vessel.

3. This is an action for declaratory relief within the admiralty and maritime jurisdiction of the United States District Court and is brought within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure governing admiralty and maritime claims.

4. This Court has subject matter jurisdiction over this matter under diversity jurisdiction as plaintiffs and defendant are residents of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper in this district in accordance with 28 U.S.C. § 1391(b)(2) because the insured boat at issue was registered and home ported in the State of Rhode Island and a substantial part of defendant's events or omissions giving rise to this suit occurred here.

## THE PARTIES

6. Plaintiff, National Liability, is a Connecticut corporation with a principal place of business at 100 First Stamford Place, Stamford, Connecticut.

7. At all relevant times, National Liability was in the business *inter alia* of issuing policies of marine insurance through BoatU.S.

8. Plaintiff, BoatU.S., is a Virginia corporation with a principal place of business at 880 South Pickett Street, Alexandria, Virginia.

9. At all relevant times, BoatU.S. was in the business *inter alia* of marketing and selling policies of marine insurance to recreational boaters and was a managing general agent for National Liability, administering certain claims under policies issued by National Liability.

10. Defendant Nathan Carman, upon information and belief, is a resident of Vermont with a residence at 3043 Fort Bridgman Road, Vernon, Vermont.

# FACT SUMMARY

11.   National Liability issued Yacht Policy No. 3985989-15 ("the Policy") to Nathan Carman, as owner, covering his 1974 built JC 31 foot Cruiser, Hull Identification No. MSZMT502J303, (the "Boat"), with an agreed $85,000 value covering the Boat & Boating Equipment at the time it allegedly sank on September 18, 2016.

12.   Coverage under the Policy commenced on December 22, 2015 and ended on December 22, 2016.

### *Defendant's Insurance Claim No. 1607671*

13.   On September 27, 2016 Carman reported Claim No. 1607671 under the Policy.

14.   He reported that he and his mother, Linda Carman, had left Ram Point Marina, in South Kingstown, Rhode Island, in the boat around midnight on September 17-18, 2016 first fishing around Block Island but then heading south to Block Canyon.  Arriving there around sunrise, they trolled north for about five hours.

15.   Carman suddenly discovered the bilge was nearly full of water, observing that neither the aft bilge pump nor the port bilge pump was functioning.  He did not check the transom area.  He told his mother to reel in the fishing lines and never saw her, spoke with her, or heard from her again.

16.   Preparing for the possibility of abandoning ship, Carman neither radioed for help nor activated the boat's EPIRB.  He says the boat quickly sank, with Carman surviving for a week in a life raft, but on information and belief his mother is deceased.

### *Defendant's Examination Under Oath*

17.    As provided under the Policy, Carman agreed to be "examined under oath" ("EUO") on December 16, 2016 and was represented by counsel during it and vouched for him.

18.     During his EUO, Carman testified that on the day before the sinking, on September 17, 2016, he replaced the boat's port bilge pump and never confirmed the boat's aft bilge pump functioned correctly.

19.     Carman also testified that later that day he removed the boat's trim tabs, opening up four silver dollar sized thru-hull holes in the transom, just above the waterline, and attempted to repair and fill those holes with an epoxy putty stick.

20.     Carman also testified that at some point prior to that he had removed a forward structural bulkhead from below the boat's deck and determined the "stuffing box wasn't sealed to the hull properly."

21.     Plaintiffs retained a naval architect, Eric Greene of Annapolis, Maryland, to assess whether Carman's repair of the transom holes was satisfactory.

22.     Plaintiffs retained a marine surveyor, Michael McCook NAMS CMS, to assess what effect Carman's removal of the bulkhead, removal of the trim tabs, and unsatisfactory repair of the transom holes would have on the boat's structural integrity, stability and trim, and watertight integrity.

23.     By January 27, 2016 letter plaintiffs cancelled and voided Carman's Policy and declined coverage of Carman's claim, based on his EUO, Greene's opinion regarding Carman's unsatisfactory repair of the transom holes, and McCook's opinion regarding Carman's changes to the boat.  A true and correct copy of plaintiffs' letter and its enclosed Greene and McCook opinions are attached as Exhibit A.

## COUNT I
## THE POLICY IS CANCELLED
**Vermont Endorsement**

24.     Carman's Policy states in its Vermont Endorsement to the Policy:

**Cancellation**…

We may cancel for one or more of the following reasons…

    2. Material misrepresentation or fraud by you with respect to any material fact affecting this policy or in the submission of any claim under this policy;

    3. You violated any of the terms or conditions under this policy;

    4. The risk originally accepted has measurably increased;

    5. Any other reason specified by law.

25. Carman measurably increased the risk plaintiffs originally accepted because he removed one of the boat's structural bulkheads.

26. Carman measurably increased the risk plaintiffs originally accepted because the day before the boat sank he removed its trim tabs.

27. Carman measurably increased the risk plaintiffs originally accepted because the day before the boat sank he opened four half dollar sized holes in the hull near the waterline and attempted on his own to fill them, which was not satisfactory.

28. Because of the above, and among other Policy violations and reasons specified by law, plaintiffs have canceled Carman's Policy as of September 17, 2016.

## COUNT II
## THE POLICY IS VOID
### *Uberrimae Fidei*

29. Plaintiffs re-allege and incorporate paragraphs 1-28.

30. Under the established rule of maritime law governing marine insurance policies known as the doctrine of *uberrimae fidei*, Carman had a continuing duty of utmost good faith to disclose material information about the risk to plaintiffs.

31. Carman failed to disclose material information about the risk including that he removed one of the boat's structural bulkheads and determined the "stuffing box wasn't sealed to the hull properly."

32. Carman failed to disclose material information about the risk including that the day before the boat sank he removed its trim tabs.

33. Carman failed to disclose material information about the risk including that the day before the boat sank he opened four half dollar sized holes in the hull near the waterline and attempted on his own to fill them, which was not satisfactory.

34. Therefore Carman violated the doctrine of *uberrimae fidei* and the Policy is void as of September 17, 2016.

## COUNT III
## NO COVERAGE
## No Accidental Cause

35. Plaintiffs re-allege and incorporate paragraphs 1-23.

36. The Policy provides Boat & Boating Equipment coverage per Coverage A:

> **Types Of Losses Covered**
>
> We will pay for property damages to the insured boat, its engines and items listed in "What is Covered" from any accidental cause…. All coverages are subject to the limitations and exclusions of the policy.

37. Specified exclusions in the Policy are set out immediately below and are not covered:

> **Exclusions**
>
> This insurance does not cover:…
>
> > D. any loss, damage, expense or cost of repair caused directly or indirectly by incomplete, improper or faulty repair except as provided by the "Repair Guarantee"….
> >
> > F. any loss, damage or expense caused intentionally by, with the

knowledge of, or resulting from criminal wrongdoing by any insured.

38. Under established maritime law, all risk marine insurance policies cover fortuitous losses that are not excluded by the policy.

39. Among other reasons, Carman's loss was not fortuitous because he had previously removed a structural bulkhead from the boat, because he had previously determined the boat's "stuffing box wasn't sealed to the hull properly," because he never determined the boat's aft bilge pump functioned correctly, and because several hours before departing from Ram Point Marina he removed the boat's trim tabs and thereby opened four half dollar sized holes in the hull near the waterline and did not fill them in a satisfactory fashion.

40. Plaintiffs have no obligation under maritime law for Carman's claimed loss because it was not fortuitous and/or had no accidental cause and therefore his Claim No. 1607671 is denied.

### COUNT IV
### COVERAGE EXCLUDED
### Policy Exclusion D

41. Plaintiffs re-allege and incorporate paragraphs 1-23 and 35-40.

42. Carman is not entitled to coverage for Claim No. 1607671 because the loss of his boat was caused by incomplete, improper, and faulty repairs he conducted the day before it sank.

43. Plaintiffs have no obligation under the Policy for loss, damage, or expense caused directly or indirectly by Carman's incomplete, improper, and faulty repairs on or before September 17, 2016 and his Claim No. 1607671 is denied under Exclusion D

### COUNT V
### COVERAGE EXCLUDED
### Policy Exclusion F

44. Plaintiffs re-allege and incorporate paragraphs 1-23 and 35-43.

45.	Carman is not entitled to coverage for Claim No. 1607671 because the loss of his boat was caused intentionally by and/or with the knowledge of Carman.

46.	Plaintiffs have no obligation under the Policy for loss, damage, or expense caused by Carman's intentional and/or knowing actions and inactions on or before September 17-18, 2016 and his Claim No. 1607671 is denied under Exclusion F.

**COUNT VI
NO COVERAGE
Breach of the Negative Implied Warranty of Seaworthiness**

47.	Plaintiffs re-allege and incorporate paragraphs 1-23 and 35-46.

48.	Carman's Policy includes a negative implied warranty of seaworthiness each time the vessel leaves the safety of port for the open sea which invalidates coverage for loss or damage proximately caused by an unseaworthy condition known by the insured.

49.	Carman knew his boat was unseaworthy when it departed Ram Point Marina.

50.	The boat's unseaworthy condition proximately caused its sinking.

51.	Therefore because Carman breached the negative implied warranty of seaworthiness, there is no coverage for claims under the Policy.

**WHEREFORE,** Plaintiffs National Liability & Fire Insurance Company and Boat Owners Association of the United States pray:

A.	That this Court exercise its subject matter jurisdiction to determine the rights and liabilities of the parties to Yacht Policy No. 3985989-15, pursuant to 28 U.S.C. § 2201.

B.	That this Court declare and adjudge that Yacht Policy No. 3985989-15 is void and cancelled, effective September 17, 2016.

C.	That this Court declare and adjudge that there is no coverage under Yacht Policy No. 3985989-15 for defendant's Claim No. 160761 for any claims made by any party, including

but not limited to defendant's Claim No. 160761, and that plaintiffs have no further obligations to defendant.

      D.      That process in due form of law issue against defendant, citing him to appear and answer under oath all and singular the matters alleged in this Complaint for Declaratory Judgment, failing which default judgment be entered against him as set forth herein, plus attorneys' fees and costs.

      E.      That plaintiffs have such other, further relief as the Court deems just, proper, and equitable.

      RESPECTFULLY SUBMITTED January 27, 2017.

Plaintiffs
National Liability & Fire Insurance Company and
Boat Owners Association of the United States
By Their Attorneys

*Sean T O'Leary*

_____
Sean T. O'Leary, Esq. (#6035)
O'Leary Law Associates
4060 Post Road
Warwick, Rhode Island 02886
Tel:    401.615.8584
Fax:   401.884.5302
sto@olearylaw.com