UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| NATIONAL LIABILITY & FIRE INSURANCE CO. | : |
| and | : |
| BOAT OWNERS ASSOCIATION OF THE UNITED STATES | : Civil Action No: 17-0038-S-PAS |
| | : In Admiralty |
| Plaintiffs, | : |
| v. | : |
| NATHAN CARMAN | : |
| Defendant. | : |

**PLAINTIFFS' RULE 16 STATEMENT**

Nathan Carman's saga has engendered New England and national media interest and criminal investigations. But the central issue in the above captioned matter is whether he should be declared barred from marine insurance coverage for the sinking of his boat because its loss was not "accidental" under his policy and/or not "fortuitous" under maritime law? The answer is yes, yes, yes. And there are other reasons.

In our Complaint for Declaratory Judgment, ECF No. 1, plaintiffs/insurers allege in Count III, ¶ 36, that Nathan Carman's all-risk Yacht Policy covers property damage only if due to an "accidental cause." Similarly, maritime law provides that any loss must be "fortuitous" (*i.e.*, accidental) for there to be marine insurance coverage. ¶ 38. Based on the following facts from his Examination Under Oath ("EUO") testimony, plaintiffs will show that the sinking of Nathan Carman's boat was neither accidental nor fortuitous

> because he had previously removed a structural bulkhead
> from the boat, because he had previously determined the

> boat's "stuffing box wasn't sealed to the hull properly,"
> because he never determined the boat's aft bilge pump
> functioned correctly, and because several hours before
> departing from Ram Point Marina he removed the boat's trim
> tabs and thereby opened four half dollar sized holes in the
> hull near the waterline and did not fill them in a satisfactory
> fashion

¶ 39, and then after he claims he "suddenly discovered the bilge was nearly full of water…Carman neither radioed for help nor activated the boat's EPIRB" although he was a few feet from both his radio and EPIRB three different times while "[p]reparing for the possibility of abandoning ship." ¶ 39; ECF No. 1-1 at 6. Although 75 miles or so offshore in water 750 feet or so deep, he incredibly tried to rationalize, "you don't signal for distress unless you are in…imminent jeopardy." ECF No. 1-1 at 8; EUO at 107.

Consistently, the Yacht Policy excludes from coverage any loss caused by such non-accidents as Nathan Carman's personal "incomplete, improper, and faulty repair" or "intentionally by, with knowledge of, or resulting from criminal wrongdoing by" him. ¶ 37, *see also* Counts IV, V, and VI.

Based on the undisputed alterations quoted from ¶ 39 above, *see also* ¶¶ 18-20, 31-33, Nathan Carman transformed his boat into something different from what plaintiffs originally insured, thereby materially increasing the boat's risk of loss, which he concealed and did not disclose to plaintiffs. Under the Vermont Endorsement to the Yacht Policy plaintiffs therefore cancelled it, Count I, and under the maritime law doctrine of *uberrimae fidei* defendant's policy (regardless of its terms) is void, Count II.

That parenthetical immediately above is how Nathan Carman as an afterthought with new counsel unreasonably attempts to defend this suit and asserts a counterclaim, in essence claiming that an all-risk policy insures against every conceivable damage

event under the sun.  Plaintiffs deny that.  Defendant's position is unreasonable because the BoatU.S. website is replete with warnings like "*All coverage is subject to the terms, conditions, limits and exclusions of the policy…. Please read your policy carefully,*" ECF No. 14 at 7, Affirmative Defense ¶ 87, and for all the reasons stated in the Complaint for Declaratory Judgment.

Plaintiffs also reserved in ECF No. 14 at 10, Affirmative Defense ¶ 106, "further defenses as may become apparent later in discovery or otherwise" and anticipate that Nathan Carman's "criminal wrongdoing," ECF No. 1 at 7, ¶ 37, and "illegality," ECF No. 14 at 9, Affirmative Defense ¶ 89, will similarly bar his insurance claim.  Accordingly, his actions/inactions regarding his mother's death are within the scope of discovery as "relevant" to the sinking and "proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1), as is his grandfather's unsolved homicide, potentially similarly motivated by Nathan Carman's possible $11 million inheritance.  Since plaintiffs' June 7, 2017 Amended Answer to Amended Counterclaim, ECF No. 14, plaintiffs' ongoing investigation and several new developments require discovery and perhaps thereafter Fed. R. Civ. P. 15(a)(2) and LR Cv 15 leave of court to amend plaintiffs' pleadings.

Plaintiffs Initial Disclosure and 424 pages of documents were served prior to an LR Cv 26(a) Discovery Conference held by telephone on June 15, 2017 after which plaintiffs served interrogatories and requests for production that day, which have not been answered.  Plaintiffs propose deposing Nathan Carman by video in the security of the Federal Courthouse and for ease of access to Your Honor for resolution of expected deposition problems.  Correspondence between counsel, Ex. A, is attached which may assist the Court on other issues expected to be raised at the Rule 16 Conference.

RESPECTFULLY SUBMITTED July 31, 2017.

*/s/ David J. Farrell, Jr.*
David J. Farrell, Jr.
*Pro Hac Vice*
Liam T. O'Connell
*Pro Hac Vice*
Farrell McAleer & Smith LLP
2355 Main Street, P.O. Box 186
South Chatham, MA  02659
508.432.2121 x 15
sealaw@live.com

*/s/ Sean T. O'Leary*
Sean T. O'Leary (#6035)
O'Leary Law Associates
4060 Post Road
Warwick, Rhode Island 02886
401.615.8584 Office
sto@olearylaw.com

## CERTIFICATION OF SERVICE

I hereby certify that, on the 31st day of July 2017, I caused this Plaintiffs' Rule 16 Statement to be filed through the Case Management/Electronic Case Filing System, through which a copy of said statement shall be electronically delivered to all individuals who are listed as registered participants in connection with the above-captioned action.

*/s/ David J. Farrell, Jr.*
David J. Farrell, Jr.
Farrell McAleer & Smith LLP