# UNITED STATES DISTRICT COURT
## for the
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| NATIONAL LIABILITY & FIRE INSURANCE CO. and BOAT OWNERS ASSOCIATION OF THE UNITED STATES,<br><br>Plaintiffs,<br><br>v.<br><br>NATHAN CARMAN,<br><br>Defendant. | Civil Action:<br>No: 17-cv-0038-WES-PAS<br><br>In Admiralty |

### VALERIE C. SANTILLI, *ET AL.*'S MOTION TO INTERVENE AS INTERESTED PARTIES UNDER F.R.C.P. 24 REQUESTING MODIFICATION OF PROTECTIVE ORDER

### EMERGENCY RELIEF REQUESTED PURSUANT TO LOCAL RULE 9

Movants, Valerie C. Santilli, individually and as executrix of the estate of John C. Chakalos, Elaine Chakalos, and Charlene Gallagher (collectively, "Movants") are the petitioners in a New Hampshire litigation against Nathan Carman, *Santilli, et al., v. Carman, et al.*, Case No. 313-2017-EQ-00396, commenced in July 2017 and currently pending before the New Hampshire Circuit Court - Probate Division (Concord) (the "New Hampshire Action").

While the remedies sought in the present action (the "Rhode Island Action") and the New Hampshire Action differ, both seek relief based on Mr. Carman's scheme to accelerate his inheritance by killing his grandfather (Movants' father), John Chakalos, and then causing the disappearance and presumed death of his mother (Movants' sister), Linda Carman, by deliberately sinking his boat while he and his mother were allegedly fishing.

Defendant, Nathan Carman, is using the Protective Order entered by this Court on December 29, 2017 (Dkt. No. 35) (the "Protective Order") as a shield to improperly conceal evidence provided by him in this action from Movants in the New Hampshire Action. This motion seeks to modify this Court's Protective Order to permit disclosure of this crucial material.

The discovery sought by Movants for the New Hampshire Action includes, but is not limited to, the transcripts of Mr. Carman's depositions from the Rhode Island Action, any exhibits introduced at those depositions, and Mr. Carman's responses to interrogatories and requests for admission in the Rhode Island Action. Given the overlap between the facts and issues developed in the two litigations, these documents are highly relevant in the New Hampshire Action.

Notably, the Protective Order entered by this Court limits only the ability of *plaintiffs*, National Liability & Fire Insurance Co. and Boat Owners Association of the United States ("Plaintiffs"), to disclose documents produced and designated confidential or highly confidential by Mr. Carman. It does not in any way constrain Mr. Carman's ability to disclose these documents to non-parties when requested or required to do so. Nevertheless, Mr. Carman has objected to producing them to Movants in response to their discovery requests, despite acknowledging at least one deposition's relevance in the New Hampshire Action.

Movants have tried several times to compel production of these documents in the New Hampshire Action. Each time, however, the New Hampshire Probate Court has denied Movants' requests, most recently in an order dated August 9, 2018, out of concern that it might interfere with this Court's Protective Order to compel Mr. Carman to produce his own purportedly confidential information to Movants.

Accordingly, Movants hereby move to intervene in this action under Federal Rule of Civil Procedure 24(b) for the limited purpose of modifying the Protective Order to allow production of documents designated confidential and highly confidential by Mr. Carman to Movants and/or their counsel on the same terms as currently apply to the Plaintiffs and their counsel in this case.

Movants make this motion on an emergency basis pursuant to Local Rule 9 because of imminent discovery deadlines in the New Hampshire Action. The deadline for all non-expert depositions and Movants' expert disclosures in the New Hampshire Action is October 1, 2018, and Mr. Carman's deposition is scheduled to proceed before a referee in the New Hampshire court on August 27 and 28, 2018.

## BACKGROUND

### *Overlapping Factual Allegations*

Both the Rhode Island Action and the New Hampshire Action arise, at least in significant part, from an incident the night of September 17, 2016. Plaintiffs and Movants allege that on that night, Mr. Carman and his mother, Linda, left the Ram Point Marina in Rhode Island on the Chicken Pox. *See* Affidavit of Gordon P. Katz, dated August 16, 2018 ("Katz Affidavit") Ex. A ¶ 22; Dkt.[1] No. 1 ¶ 14. Upon information and belief, they were planning to fish near Block Island and would return the next day, September 18, 2016. *See* Katz Aff. Ex. A ¶ 23; Dkt. No. 1 ¶ 14. But Mr. Carman and his mother did not return the next day. According to Mr. Carman, on the morning of September 18th, the Chicken Pox took on water and quickly sank. *See* Katz Aff. Ex. A ¶ 27; Dkt No. 1 ¶¶ 15–16). Approximately one week later, Mr. Carman was found on a life raft floating somewhere south of Martha's Vineyard. *See* Katz Aff. Ex. A ¶¶ 29, 32; Dkt.

---

[1] References to "Dkt. No." are to entries on this Court's docket for the Rhode Island Action.

3

No 1 ¶ 16.  Linda and the Chicken Pox have not been seen since.  *See* Katz Aff. Ex. A ¶ 34; Dkt. No. 1 ¶ 15.

Plaintiffs and Movants both allege that Mr. Carman caused the loss of his vessel through his own knowing and/or intentional actions.  *See* Dkt. No. 1 ¶¶ 45–46; Katz Aff. Ex. A ¶¶ 22–34.  Specifically, Mr. Carman's incomplete, improper and faulty "repairs" to the Chicken Pox, including removal of the trim tab and removal of a structural bulkhead, made the vessel unseaworthy.  *See* Dkt. No. 1 ¶¶ 19, 20, 42, 49, 50; Katz Aff. Ex. A ¶ 22.  And Mr. Carman made no effort to call for help when the Chicken Pox was in distress.  *See* Dkt. No. 1 ¶ 16; Katz Aff., Ex. A ¶ 27.  Plaintiffs and Movants further allege that Mr. Carman took these actions as part of a deliberate scheme to accelerate his inheritance by killing his grandfather, John Chakalos, and then causing the disappearance and presumed death of his mother, Linda Carman.  *See* Katz Aff. Ex. A ¶¶ 10–11, 22–34; Dkt. No. 59 at 2–3.  Mr. Carman stands to gain a substantial sum from his grandfather's estate as a result of Linda's disappearance or death.  *See* Katz Aff. Ex. A ¶¶ 35–47.  In order to prevent Mr. Carman from benefiting from his wrongdoing, Movants have requested that the New Hampshire Probate Court, among other things, impose a constructive trust over the portion of his grandfather's estate that flows into a trust for the benefit of Linda.  *See* Katz Aff. Ex. A ¶¶ 52–55.

### *The Protective Order*

On December 29, 2017, the Court entered the Protective Order in this case.  *See* Dkt. No. 35.  It allows Mr. Carman to designate any documents or information that he produces to Plaintiffs as either "confidential" or "highly confidential."  *Id.* at ¶ 1.  Documents designated "confidential" by Mr. Carman may not be disclosed by "[p]laintiffs or their legal counsel . . . to the general public, to the media, and/or to any non-party to this action."  *Id.* at ¶ 3.  Documents

4

designated "highly confidential" by Mr. Carman must be securely retained by "counsel for Plaintiffs . . . to ensure no access except as needed for use in connection with this case" and may not be disclosed by "[c]ounsel for the Plaintiffs . . . to any person or entity without first receiving written consent from counsel for [Mr. Carman]." *Id.* at ¶ 2.

Pursuant to the Protective Order, Mr. Carman has designated at least his two depositions in this action, and the exhibits used during those depositions, as confidential and may have likewise designated his discovery responses and other documents produced.

### *Movants' Discovery Efforts in the New Hampshire Action*

Movants have repeatedly attempted to avoid having to burden this Court with the present motion. As explained more fully in the Katz Affidavit, Movants have served two sets of document requests on Mr. Carman and filed three motions in the New Hampshire Probate Court trying to obtain Mr. Carman's discovery materials in this action designated by him as confidential or highly confidential, and particularly Mr. Carman's deposition transcripts and exhibits. Mr. Carman, however, has objected in each instance and the New Hampshire Probate Court has denied all three of Movants' motions. *See* Katz Aff. ¶¶ 4–14 & Exs. B–J. Most recently, in an August 9, 2018 order, the New Hampshire Probate Court concluded that—despite the Protective Order's express limitations only on Plaintiffs' and their legal counsel's ability to disclose documents produced and designated by Mr. Carman as confidential or highly confidential under the Protective Order—the only way for Movants to obtain copies of these documents is to move to intervene in this Court. *See* Katz Aff. ¶ 14 & Ex. J (the "Third NH Order") at 2–6. Movants do so now.

## ARGUMENT

**I. THIS COURT SHOULD EXERCISE ITS DISCRETION TO ALLOW MOVANTS TO INTERVENE FOR THE LIMITED PURPOSE OF SEEKING MODIFICATION OF THE PROTECTIVE ORDER**

Nonparties, such as Movants, may intervene under Federal Rule of Civil Procedures 24 for the purpose of challenging confidentiality orders. *See, e.g., Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 783–84; *Equal Employment Opportunity Comm'n v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1045, 1046 (D.C. Cir. 1998) ("*EEOC*").

Such intervention is permitted upon a timely motion when the movant's claim or defense and the main action have a question of law or fact in common. *See* Fed. R. Civ. P. 24(b)(1)(B); *EEOC*, 146 F.3d at 1045–48. These requirements are interpreted with considerable flexibility where, as here, a non-party seeks intervention for the sole purpose of pursuing modification of a protective order. *See e.g., EEOC*, 146 F.3d at 1045–46 (recognizing "generous" and "flexible" interpretation of Rule 24 in this circumstance); *In re Ethylene Propylene Diene Monomer ("EPDM") Antitrust Litig.*, 255 F.R.D. 308, 315 (D. Conn. 2009) ("Courts have interpreted these requirements with even greater flexibility when the third-party seeks to intervene only for the purpose of gaining access to discovery materials.").

### A. Movants' Motion Is Timely

"In cases where parties have sought intervention for the limited purpose of modifying a protective order, the requirement of timeliness is quite broad." *See e.g.*, *In re EPDM Antitrust Litig.*, 255 F.R.D. at 315. Four factors are relevant to determining timeliness:

> (1) the length of time the applicant knew or reasonably should have known that its interest was imperiled before it moved to intervene; (2) the foreseeable prejudice to existing parties if intervention is granted; (3) the foreseeable prejudice to the applicant if intervention is denied; and (4) idiosyncratic circumstances which, fairly viewed, militate for or against intervention.

*Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1231 (1st Cir. 1992).  Applying these factors to the circumstances here, Movants' intervention is timely.

Under the first factor, the length of time at issue weighs heavily in favor of intervention.  A motion to intervene is timely when, as here, the action in which a party seeks to intervene is ongoing.  *See In re EPDM Antitrust Litig.*, 255 F.R.D. at 315 ("The present suit remains ongoing, therefore the motion to intervene is timely.").  In the bulk of the cases where timeliness is in question, the movant sought to intervene in a terminated action.  But even in those cases, "there is a growing consensus among the courts of appeals that intervention to challenge confidentiality orders may take place long after a case has been terminated."  *EEOC*, 146 F.3d at 1047 (internal quotation marks and citations omitted).

In any event, Movants moved to intervene less than six months after Mr. Carman's first objection to producing discovery from the Rhode Island Action and within *days* of receiving the final order in the New Hampshire Action definitively denying Movants access to these documents.  *See* Katz Aff. ¶¶ 5, 14 & Ex. J.  Until receiving the Third NH Order on August 13, 2018, Movants did not know for certain that they would need to intervene in this action to obtain discovery produced and designated confidential by Mr. Carman.  Prior to that point, Movants reasonably believed that they could work with Mr. Carman and the New Hampshire Probate Court to resolve this issue in that forum by narrowing their document requests and addressing the concerns and questions raised by the court.  *See* Katz Aff. ¶¶ 4–14.  In any event, periods of time far longer have been found timely.  *See, e.g., In re New Motor Vehicles Canadian Export Antitrust Litig.*, No. 03-md-1532, 2009 WL 861485, at *4 (D. Me. Mar. 26, 2009) (finding a year and a half delay timely).

The second and third factors also weigh in favor of allowing Movants to intervene. Movants seek to intervene for only the limited purpose of modifying the Protective Order to gain access to Mr. Carman's discovery materials. This intervention will not impact resolution of the underlying issues of the Rhode Island Action and should not cause any delay here. *See, e.g., Public Citizen*, 858 F.2d at 786 ("[I]f the desired intervention relates to an ancillary issue and will not disrupt the resolution of the underlying merits, untimely intervention is much less likely to prejudice the parties."); *In re EPDM Antitrust Litig.*, 255 F.R.D. at 315 ("[G]ranting access to the discovery materials in this case will not delay the progress of these proceedings for the . . . defendants."). In addition, Mr. Carman has waived his right to assert any privilege (such as the Fifth Amendment) with respect to his deposition testimony, interrogatory responses, or other discovery responses regarding whether he intentionally sank his boat as part of a scheme to murder his grandfather and mother to expedite his inheritance. *See* Dkt. No. 59 at 4 n.2.

By contrast, there is considerable prejudice to Movants if intervention is denied. Given the substantial overlap between the facts at issue in each action, if Movants are denied access to Mr. Carman's two prior depositions, exhibits from those depositions, and Mr. Carman's other Rhode Island discovery materials, they will be forced to engage in duplicative discovery, while wasting precious time and resources that could otherwise be devoted to completing other non-expert depositions and Movants' expert disclosures in the New Hampshire Action by the October 1, 2018 deadline. *See* Katz Aff. Ex. K at 9. Such prejudice is sufficient to justify intervention. *See, e.g., In re EPDM Antitrust Litig.*, 255 F.R.D. at 315–16 (permitting intervention when it would "likely save [intervenor] much time and expense in its . . . litigation by avoiding duplicative discovery").


Equally, if not more important, Movants would be further prejudiced if they were not allowed to explore Mr. Carman's prior statements and were deprived of the ability to assess any inconsistent statements or statements against Mr. Carman's interest with respect to crucial issues identical to both cases. *See* N.H. R. Evid. 613; Fed. R. Evid. 613; *Austin v. Nestle USA, Inc.*, No. C.A. 7:09-CV-03320, 2010 WL 4318815, at *4 (D.S.C. Oct. 26, 2010) (compelling production of depositions from a prior litigation because "Plaintiffs are entitled to explore prior statements of witnesses.").

Finally, with respect to the fourth factor, there are not idiosyncratic factors weighing against intervention in this case. To the contrary, intervention for the limited purpose of modifying a protective order to obtain discovery for use in a similar matter is fairly routine.

In sum, given the limited scope of intervention sought and that Movants filed this motion within days of receiving the Third NH Order, the Court should find their motion timely.

### B. The New Hampshire Action Shares Many Identical Factual Questions with the Rhode Island Action

Rule 24(b)(1)(B)'s requirement that a would-be-intervenor share a common question of law or fact with the underlying suit "is satisfied if the movant raises a common question in a suit filed in another jurisdiction." *In re EPDM Antitrust Litig.*, 255 F.R.D. at 316. Where, as here, the two actions raise nearly identical factual issues, *see supra,* pages 3–4, this requirement is easily met. *See id.* (allowing intervention where "similar factual questions" were presented)*; EEOC*, 146 F.3d at 1047 (allowing intervention where two actions "plainly share[d] common questions" and had "a number of factual similarities").[2] Indeed, this Court "has already ruled that discovery in [the Rhode Island Action] may focus on facts bearing directly on an alleged

---

[2] Even if the connected facts of the two cases were more attenuated, intervention would still be appropriate. *See Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d 470, 474 (9th Cir. 1992) ("There is no reason to require such a strong nexus of fact or law [as identical factual issues or legal claims] when a party seeks to intervene only for the purpose of modifying a protective order.").

9

scheme to procure a substantial inheritance by murdering, first, his grandfather and then, his mother through the intentional sinking of the vessel, because such facts bear directly on his intent in making the changes and repairs to the vessel that Plaintiffs allege resulted in its loss." Dkt. No. 59 at 2–3. These precise factual issues also are at the heart of the New Hampshire Action. *See* Katz Aff. Ex. A.

   **C.** **Movants' Intervention Will Not Unduly Delay or Prejudice Adjudication of the Rights of the Original Parties**

  Movants do not seek to intervene in the adjudication of the merits of the Rhode Island Action. Rather, they seek only to slightly modify the existing Protective Order to allow them to use Mr. Carman's confidential discovery from this action in the New Hampshire Action on the same terms as Plaintiffs and their counsel. Allowing intervention for this limited purpose should not delay the underlying Rhode Island Action in any way or prejudice the parties' rights. By contrast, as explained above, Movants would suffer prejudice by being forced to conduct duplicative discovery and being deprived of access to Mr. Carman's prior statements.

**II.** **MODIFICATION OF THE PROTECTIVE ORDER TO GRANT MOVANTS ACCESS TO DISCOVERY IS WARRANTED.**

  Federal courts have inherent power to modify protective orders. *See Public Citizen*, 858 F.2d at 782 (1st Cir. 1988). While district courts have discretion to modify a protective order depending on the circumstances of the case, *see, e.g., Rowe v. Liberty Mutual Group, Inc.*, No. 11-cv-366-JL, 2015 WL 12851706, at *1, *6 (D.N.H. Apr. 28, 2015) (citations omitted), courts generally recognize a presumption "*in favor of access* in cases where an intervening party involved in bona fide collateral litigation seeks access to protected discovery materials," *see In re EPDM Antitrust Litig.*, 225 F.R.D. at 317–18 (citing *Public Citizen*, 858 F.2d at 791 for the First Circuit's rejection of the more restrictive "extraordinary circumstances" standard) (emphasis added); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, No. 03-md-1532,

10

2009 WL 861485, at *8 (D. Me. Mar. 26, 2009) ("[I]t is highly unlikely that the First Circuit would find it an abuse of discretion to modify a protective order to permit third-party access by collateral litigants.").

Modifying the Protective Order to grant Movants access to Mr. Carman's self-designated confidential discovery materials in this case will further the legitimate interest of placing Movants "in a position they would otherwise reach only after repetition of another's discovery." *In re EPDM Antitrust Litig.*, 255 F.R.D. at 317–18 (quoting *Wilk v. Am. Med. Ass'n*, 635 F.2d 1295 (7th Cir. 1980)); *see also Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d 470, 475 (9th Cir. 1992) (describing the Ninth Circuit's precedent strongly favoring "disclosure to meet the needs of parties pending in [other] litigation").

By contrast, any interest Mr. Carman has in protecting his confidential information from public disclosure or from protecting his highly confidential information from disclosure beyond counsel in the two litigations can be protected by subjecting Movants and their counsel to the provisions of the Protective Order. *In re New Motor Vehicles Canadian Export Antitrust Litigation*, 2009 WL 861485, at *8; *Beckman Indus.,* 966 F.2d at 475 ("[L]egitimate interests in privacy can be protected by putting the intervenors under the same restrictions as those contained in the original protective order.").

The Proposed Modified Protective Order submitted by Movants herewith would bind them and their counsel to the same restrictions as Plaintiffs and their counsel. Movants agree to abide by the terms of the Proposed Modified Protective Order with respect to any information they may obtain from the Rhode Island Action. *See* Katz Aff. ¶ 18. Further, there also is a protective order in the New Hampshire Action that would afford Mr. Carman similar protection for confidential information. *See* Katz Aff. Ex. L. Thus, any interest Mr. Carman has in

maintaining the confidentiality of the information at issue will be adequately protected here and in the New Hampshire Action. In the absence of substantial prejudice to Mr. Carman, Movants' request for modification should be granted.[3]

### III. EMERGENCY RELIEF IS WARRANTED DUE TO IMMINENT DISCOVERY DEADLINES

The deadline for all non-expert depositions and Movants' expert disclosures in the New Hampshire Action is October 1, 2018, *see* Katz Aff. Ex. K at 9, and Mr. Carman's deposition is scheduled to proceed before a referee in the New Hampshire court on August 27 and 28, 2018, *see* Katz Aff. ¶ 17. It will be a waste of the referee's, Movants', and Mr. Carman's time and resources if Movants must spend large portions of his deposition asking questions he has already answered in his two days of deposition in the Rhode Island Action. Further, as explained above, Movants stand to suffer significant prejudice if they must proceed through Mr. Carman's deposition and the remaining non-expert depositions, and produce their expert disclosures, without the benefit of Mr. Carman's prior statements, which even Mr. Carman acknowledges are relevant to the New Hampshire Action. *See* Katz Aff. ¶ 13 & Ex. J.

Movants' counsel has spoken with Plaintiffs' attorneys about Movants' intention to intervene and seek modification of the protective order. Plaintiffs' counsel has affirmed that they have no objection to intervention for this limited purpose. *See id.* at ¶ 19.

### CONCLUSION

For the reasons stated above, Movants respectfully request that the Court: (1) permit Movants to intervene in this action for the limited purpose of modifying the Protective Order,

---

[3] Modification is particularly appropriate in this case because the Protective Order expansively permits Mr. Carman to shield documents "without a showing of good cause for confidentiality as to any individual documents." *Public Citizen*, 858 F.2d at 790. Such "blanket" protective orders are particularly subject to modification as they are, by their nature, over inclusive. *Id*. *See also, Rowe v. Liberty Mutual Group, Inc*., No. 11-cv-366-JL, 2015 WL 12851706, at *5 (D.N.H. Apr. 28, 2015) (protective order particularly subject to modification where it "applied to any document Liberty Mutual Produced; so long as it bothered to stamp the paper "Confidential").

and (2) modify the Protective Order so that Movants may obtain access to Mr. Carman's documents designated confidential or highly confidential on the same terms as Plaintiffs. Movants' Proposed Modified Protective Order is attached hereto as Exhibit 1 (clean) and Exhibit 2 (redlined to show proposed changes to the current Protective Order).

## ORAL ARGUMENT REQUESTED

Pursuant to Local Rule 7(e), Movants respectfully request oral argument on this Motion and anticipate that it would take approximately 30 minutes.

Dated:  August 16, 2018

Respectfully submitted,

VALERIE C. SANTILLI, both individually and as Executrix of the Estate of John Chakalos, ELAINE CHAKALOS, and CHARLENE GALLAGHER,

By their attorneys:

OLIVERIO & MARCACCIO LLP

*/s/ Matthew T. Oliverio*
Matthew T. Oliverio (Bar No. 3372)
Santiago Posas (Bar No. 9519)
55 Dorrance Street, Suite 400
Providence, RI  02903
Tel:  (401) 861-2900
Fax:  (401) 861-2922
mto@om-rilaw.com
shp@om-rilaw.com

and

Gordon P. Katz (*Pro Hac Vice* Pending)
Jessica Ragosta Early (*Pro Hac Vice* Pending)
HOLLAND & KNIGHT, LLP
10 St. James Ave
Boston, MA 02116
Tel:  617-573-5839
Fax: 617-523-6850
gordon.katz@hklaw.com
jessica.early@hklaw.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on August 16, 2018 I filed this motion via the CM/ECF System, through which a copy will be electronically delivered to all counsel of record.

                                    */s/ Matthew T. Oliverio*
                                    Matthew T. Oliverio