# UNITED STATES DISTRICT COURT
## For the
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ———————————————— ) | |
| NATIONAL LIABILITY & FIRE INSURANCE ) | |
| CO. and BOAT OWNERS ASSOCIATION OF ) | |
| OF THE UNITED STATES ) | Civil Action: |
|     Plaintiffs ) | No: 17-cv-0038-S-PAS |
| ) | |
| v. ) | In Admiralty |
| ) | |
| NATHAN CARMAN ) | |
|     Defendant. ) | |
| ———————————————— ) | |

## DEFENDANT, NATHAN CARMAN'S PRE-TRIAL PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW

### The Parties

1.      The Defendant, Nathan Carman, is and at all relevant times has been a Resident of Vernon, Vermont.

2.      From December 2015 through September 2016, Nathan Carman was a recreational boater who lacked any specialized education, training, or knowledge of insurance in general or marine insurance in particular.  During this time period, Nathan Carman's boating activities on navigable waters was strictly recreational.

3.      Plaintiff, Boat Owners Association of the United States is, and at all material times has been, a corporation organized and existing pursuant to the laws of the District of Columbia with a principal place of business in Virginia.

4.      At all material times Plaintiff, Boat Owners Association of the United States was the registered owner of the trademark "BoatU.S." and conducted business using the trade name and/or D.B.A. "BoatU.S.".

5.      Plaintiff, Boat Owners Association of the United States is and at all material times has been a wholly owned indirect subsidiary of Berkshire Hathaway, Inc.

6.      Plaintiff, National Liability & Fire Insurance Company, is, and at all material times has been, a corporation organized and existing under the laws of the State of Connecticut with a principal place of business in Stamford, CT.

7.      Plaintiff, National Liability & Fire Insurance Company, is, and at all material times has been, a wholly owned direct subsidiary of Berkshire Hathaway, Inc.

8.      Berkshire Hathaway, Inc., is, and at all material times, has been a publicly traded for-profit corporation that has possessed the authority and ability to direct and control the actions of its wholly owned subsidiaries, Boat Owners Association of the United States and National Liability & Fire Insurance Company.

9.      At all times material to this action, Berkshire Hathaway, Inc. has sought to exercise its control over its subsidiaries, Boat Owners Association of the United States and National Liability & Fire Insurance Company, so as to maximize the net long-term financial benefit to Berkshire Hathaway, Inc.

10.     At times material to this action, Boat Owners Association of the United States is and has been a managing general agent of National Liability and Fire Insurance Company with respect to policies of liability and property damage insurance covering recreational boats sold through "BoatU.S.".

11.     Boat America Corporation and Boat/U.S., Inc. are Corporations organized and existing under the laws of the Commonwealth of Virginia with principal places of business in Virginia. Boat America Corporation and Boat/U.S., Inc. are also wholly owned (direct or indirect) subsidiaries of Berkshire Hathaway, Inc.

12.     At all times material to this action, Boat Owners Association of the United States, Boat America Corporation, and Boat/U.S., Inc. conducted business operations as partners and/or joint venturers under the trade name and/or D.B.A. "BoatU.S." from a principal place of business in Northern Virginia.

13.     At all material times "BoatU.S." marketed a variety of goods and services specifically directed toward non-commercial recreational boaters, including without limitation, BoatU.S. memberships, towing services, boat loans and insurance covering recreational boats.  "BoatU.S." owned and controlled the www.BoatUS.com website, which was explicitly targeted to non-commercial recreational boaters and which provided information regarding the goods and services offered by "BoatU.S.".

14.     In the fall of 2015, Plaintiff, Boat Owners Association of the United States, operating through "BoatU.S." and the www.BoatUS.com website advertised and marketed "Agreed Hull Value Policies" which it described to recreational boaters and potential customers visiting the web site as being "the best coverage for your boat" as "recommended for larger boats including cruisers" and as containing  "Consequential Damage Coverage" which "Covers immediate damage to the insured boat resulting from fire, explosion, sinking, or collision, even when the initial cause of the loss was excluded."

<u>Preliminary Communications between the Parties</u>

15.     In November and December 2015, Nathan Carman visited the www.BoatUS.com website referred to in paragraphs 13 & 14 above, and reviewed the advertising and marketing information published by "BoatU.S."  As a result of his review of the information published on the web site, the Defendant called the phone number listed on the site and initiated

communications with the Defendants which led to his purchase of insurance from the Plaintiffs covering his approximately 31ft recreational sports fishing boat.

16.     In Mid-December 2015, the Defendant, Nathan Carman, purchased an approximately 31ft recreational sports fishing boat with Hull Identification No. MSZMT502J303 (hereinafter the "recreational sports fishing boat") that is the subject of this action.  Nathan Carman's recreational sports fishing boat was a recreational type fishing boat which was purchased by Nathan Carman with the intent of using it for recreational purposes.  From the time Nathan Carman purchased the recreational sports fishing boat in December 2015 through and including the time the boat sank in September of 2016, his recreational sports fishing boat was exclusively used for recreational rather than commercial purposes.

17.     From early December 2015 through December 21, 2015, Nathan Carman had several telephone conversations with employees and/or agents of the Plaintiff, Boat Owners Association of the United States, relating to the purchase of property and liability insurance covering his recreational sports fishing boat.

18.     From early December 2015 through December 21, 2015, Nathan Carman exchanged several written communications and documents with employees and/or agents of the Plaintiff, Boat Owners Association of the United States, relating to his purchase of property and liability insurance coverage for his recreational sports fishing boat.

<u>The Offer</u>

19.     On or about December 17, 2015, the Plaintiff, Boat Owners Association of the United States delivered to Defendant, Nathan Carman, a written "BoatU.S. Insurance Quotation" a copy of which is attached hereto as Ex. "A".

20.     The "BoatU.S. Insurance Quotation" describe in paragraph 19 above was for an "All Risk" "Agreed Hull Value" type of insurance policy which provided (among other coverages) $66,200.00 in coverage for property damage to, or the total loss of, Nathan Carman's recreational sports fishing boat in exchange for an annual premium of $1,561.00.

21.     In addition to the $1,561.00 premium, the "BoatU.S. Insurance Quotation" describe in paragraph 19 above, required Nathan Carman to pay BoatU.S. a $24 membership fee and to become a "member" of Boat Owners Association of the United States.

22.     At 6:31 pm on December 21, 2015, Plaintiff, Boat Owners Association of the United States doing business as "BoatU.S." delivered to the Defendant, Nathan Carman, a correspondence dated December 21, 2015.  A copy of this December 21, 2015 correspondence is attached hereto as Exhibit "B".

23.     The BoatU.S. correspondence dated December 21, 2015 (described in paragraph 22 above) specifically references the December 17, 2015 "BoatU.S. Insurance Quotation" described in paragraph 19 above.

24.     Through the BoatU.S. correspondence dated December 21, 2015 (described in paragraph 22 above), the Plaintiff, Boat Owners Association of the United States advised the Defendant, Nathan Carman, that the survey which was required as a "condition of coverage" had been received and "approved" and that Boat Owners Association of the United States, was offering to sell to Nathan Carman the "All Risk" "Agreed Hull Value" insurance policy on the terms described in the December 17, 2015 "BoatU.S. Insurance Quotation" (described in paragraph 19 above and attached hereto as Exhibit "A").

25.     Through the BoatU.S. correspondence dated December 21, 2015 (described in paragraph 22 above), Plaintiff, Boat Owners Association of the United States, advised the Defendant,

5

Nathan Carman, that he could immediately purchase insurance coverage on the terms described

in the December 17, 2015 "BoatU.S. Insurance Quotation" (described in paragraph 19 above and

attached hereto as Exhibit "A") by calling 1-800-283-2883 and accepting the offered coverage

"over the phone" and that payment of the insurance premium and the required BoatU.S.

Membership dues could made by credit card over the phone.

Acceptance of Offer

26.      Prior to 6:59pm on December 21, 2015, the Defendant, Nathan Carman, telephoned the

offices of "BoatU.S." and spoke with an agent and/or employee of Plaintiff, Boat Owners

Association of the United States.  During this telephone conversation, Defendant Nathan

Carman, identified himself and provided the Plaintiff's agent and/or employee with the

application number identified in the upper right-hand corner of the December 17, 2015

"BoatU.S. Insurance Quotation" referred to in paragraph 19 above.  During this telephone

conversation, Defendant, Nathan Carman, verbally accepted Defendant, Boat Owners

Association of the United States', offer to sell to Nathan Carman insurance coverage on

recreational sports fishing boat on the terms described within the December 17, 2015 "BoatU.S.

Insurance Quotation" (described in paragraph 19 above and attached hereto as Exhibit "A").

27.      During the telephone conversation on the evening of December 21, 2015 (described in

paragraph 26 above), the Defendant Nathan Carman, with the consent of the Plaintiff, Boat

Owners Association of the United States, elected to pay the insurance premium through an

installment premium payment plan and provided the Plaintiff, Boat Owners Association of the

United States, with his credit card information and authorized the Plaintiff, to immediately

charge against his credit card the approximately $24 dues required for "membership" in the Boat

Owners Association of the United States, and in accordance with the Plaintiff's installment plan

6

authorized an immediate charge against his credit card for 30% as the down payment of the

annual premium identified within the December 17, 2015 "BoatU.S. Insurance Quotation"

(described in paragraph 19 above and attached hereto as Exhibit "A"). During this telephone

conversation on the evening of December 21, 2015, Defendant, Nathan Carman, further

authorized the Plaintiff to make future charges against his credit card as payment of the

insurance premium in accordance with the Plaintiffs' installment premium payment plan.

28.     During the telephone conversation described in Paragraphs 26 and 27 above, the agent

and/or employee of Plaintiff, Boat Owners Association of the United States communicated to the

Defendant, Nathan Carman, that upon acceptance of the December 17th "BoatU.S. Insurance

Quotation" and payment of BoatUS membership dues and the partial premium (as described in

paragraph 27 above) that the insurance coverage on Defendant, Nathan Carman's recreational

sports fishing boat described within the December 17, 2015 "BoatU.S. Insurance Quotation"

would be effective immediately.

Terms, Conditions and Limitations of the Insurance Contract

29.     At the conclusion of the December 21, 2015 telephone conversation (described in

paragraphs 26 through 28 above) there existed a binding insurance contract and/or agreement

between Defendant, Nathan Carman and the Plaintiffs, Boat Owners Association of the United

States and Plaintiff, National Liability & Fire Insurance Company, in which the Plaintiffs agreed

(among other things) that in consideration of the payment of the membership dues and the

insurance premium (as described in Paragraph 27 above) that if (during the one year time period

following the December 21, 2015 telephone conversation) the Defendant, Nathan Carman,

sustained a total loss of his recreational sports fishing boat as the result of the boat sinking

(within the "cruising limits" set forth in the December 17th "BoatU.S. Insurance Quotation") as

7

the result of any accidental cause, then the Plaintiffs would pay the Defendant, Carman, the

Agreed Hull Value of $66,200.00 minus a deductible of $1,324.00.  Under the terms of the

insurance policy agreed to by the parties, the Plaintiffs were obligated to pay the Agreed Hull

value if Carman negligent operation, negligent maintenance and/or negligent repairs were a

proximate cause of a sinking and total loss of his recreational sports fishing boat.

Marine Insurance Binder

30.     At 6:59 pm on December 21, 2015, after the telephone conversation described in

paragraphs 26 through 28 above, the Plaintiff, Boat Owners Association of the United States,

delivered to the Defendant, Nathan Carman, a "Marine Insurance Binder" a copy of which is

attached as Exhibit "C".

Loss

31.     On September 18, 2016 the Defendant, Nathan Carman's recreational sports fishing boat

sank while operating within the "cruising limits" of the parties' insurance agreement, contract

and/or policy.  At trial the parties introduced evidence tending to establish a number of possible

causes for the sinking of the recreational sports fishing boat, including without limitation, latent

defects, negligent operation, a peril of the sea, negligent maintenance and negligent repair.

Evidence at trial as to each of these possible causes was insufficient to establish that any one of

them was more likely than not a Proximate cause of the sinking and total loss of the recreational

sports fishing boat.  Plaintiffs failed to establish that it is more likely than not that Carman

intentionally sank his recreational sports fishing boat, and/or that it is more likely than not that

the sinking of Carman's boat was caused by or related to criminal activity on the part of Mr.

Carmen.  While the precise proximate cause or causes of the sinking of Mr. Carman's

8

recreational sports fishing boat remain undetermined, it is more likely than not that the cause or causes of the sinking was accidental.

Notice of Claim

32.     Several days prior to October 12, 2016, Defendant, Nathan Carman, timely reported the sinking of his recreational sports fishing boat and made a timely claim to the Plaintiffs for the Agreed Hull Value called for in the parties' insurance contracts.

33.     On October 12, 2016, the Plaintiffs acknowledged receipt of the claim described in Paragraph 32 above and requested that Defendant Carman provided the Plaintiffs with information relating to the sinking of the vessel and also provide specific documents related to work performed on the vessel prior to the sinking.

Proof of Claim

34.     On October 19, 2016, the Defendant, Nathan Carman, provided the Plaintiffs with all of the requested information and documents requested by the BoatUS as described in Paragraph 33 above.  In late October 2016, BoatUS received a report factually supporting payment of Mr. Carmen's Hull claim from a surveyor who had been hired to investigate Carman's Hull claim. Soon thereafter BoatUS communicated to Carmen its intent to pay his hull claim arising from the sinking of his recreational sports fishing boat.

35.     In early November 2016, the Plaintiffs' requested that the Defendant, Nathan Carman agree to be examined under oath by an attorney representing the Plaintiffs in early December at an attorney's office in Massachusetts.

36.     In November 2016, Defendant Nathan Carman, agreed to Plaintiffs' request that he submit to an examination under oath.

37.     On December 16, 2016, Defendant Nathan Carman was examined under oath for approximately five hours in an office in Salem, Massachusetts by an attorney representing the Plaintiffs.

38.     On January 27th 2017, the Plaintiffs filed their Complaint for Declaratory Judgment giving rise to this action.

Denial of Claim

39.     Concurrent with the filing of their Complaint for Declaratory Judgement, the Plaintiffs forwarded to the Defendant, Nathan Carman, a letter dated January 27, 2015 in which the Plaintiffs' formally denied coverage in connection with the Defendant's October 2016 claim for payment of the Agreed Hull Value.

40.     At all material times and with respect to all issues material to this civil action (including without limitation all acts, omission, statements, notices, knowledge, agreements, contracts, underwriting, advertising, marketing, sales and/or communications), Plaintiff, Boat Owners Association of the United States, was and is a managing general agent of Plaintiff, National Liability & Fire Insurance Company and possessed complete and unrestricted authority to market, underwrite, negotiate, sell, and issue & amend policies of insurance, to recreational boaters such as the Defendant on behalf of its principal, National Liability & Fire Insurance Company.

41.     At all material times and with respect to all issues material to this action (including without limitation all acts, omission, statements, notices, knowledge, agreements, contracts, underwriting, advertising, marketing, sales and/or communications), Plaintiff, Boat Owners Association of the United States, was the alter ego of Plaintiff, National Liability and Fire Insurance Company.

42.     During the time period starting in late November 2015 and extending through the date of

the sinking of the recreational sports fishing boat in September 2016, the Plaintiffs concealed and

did not disclose to the Defendant, Nathan Carman, the full nature and extent of the relationship

between the two Plaintiffs, including the full nature and extent of the agency relationship

between the two Defendants as described in paragraphs 40 and 41 above, and the relationship

and the common ownership & control of the two Plaintiffs as described in paragraphs 4-14

above.

43.     During the time period starting in late November 2015 and extending through the date of

the sinking of Carman's recreational sports fishing boat in September 2016, Defendant, Nathan

Carman, was not aware of the full nature and extent of the relationship between the Plaintiffs as

described in paragraphs 4-14 and 40-41 above.

44.     At all material times and with respect to all issues material to the handling of Defendants'

October 2016 claim arising from the September 18, 2016 sinking of Carman's recreational sports

fishing boat, (including without limitation all acts, omission, communications, knowledge,

acceptance of the claim, denial of the claim, payment of the claim, and notices of cancellation)

Plaintiff, Boat Owners Association of the United States, doing business as BoatU.S., was the

managing general agent of Plaintiff, National Liability and Fire Insurance Company and had

unrestricted authority to investigate, accept, deny, adjust and handle all claims relating to

recreation boat insurance policies purchased through BoatU.S.

45.     The first notice of cancellation made by either of the two Plaintiffs, to the Defendant

Carman, was the letter dated January 27, 2017 described in Paragraph 39 above.

46.     By mutual agreement of the Plaintiffs and the Defendant and in consideration of an

increased premium, effective March 25, 2016 the insurance contract (described in paragraph 29

above) was amended by increasing the "Agreed Value" of the JC 31 Cruiser to $85,000 and increasing the deductible applicable to this coverage to $1,700.00.

47.     The states of Massachusetts, Vermont, Rhode Island and Connecticut have significant contacts with the insurance contract, policy and/or agreement at issue in this action and have legitimate state interests in regulating and/or protecting some or all of the parties to this case. Viewed individually on a state by state basis (rather than relative to other jurisdictions), these significant contacts and legitimate state interests support the application of Massachusetts law, Vermont law, Rhode Island law and/or Connecticut law, to the legal disputes at issue in this case.

48.     With respect to <u>all</u> interactions between the parties to this case relating in any way to the insurance agreement at issue in this case, (starting with the Plaintiff's advertising and marketing of insurance products to recreational boaters and the Defendants submission of an application for insurance, and extending uninterrupted through the Defendant's presentation of his claim and the Plaintiff's handling of the claim) all parties to this action have had a duty of good faith and fair dealing which was owed to their counterparty.

49.     The Defendant, Nathan Carman, has fulfilled all conditions precedent to the enforcement of the insurance agreement between himself and the Plaintiffs.

<u>COUNT I</u>

Breach of Insurance Contract

Nathan Carman vs. National Liability & Fire Insurance Company

51.     On September 18, 2016, there existed an insurance contract between the Defendant, Nathan Carman, and the Plaintiff, National Liability & Fire Insurance Company which provided "All Risk" "Agreed Hull Value" coverage on Nathan Carman's JC 31 Cruiser, the conditions, limitations and terms of which are described in paragraphs 29, 30 and 46 above.

12

52.     On September 18, 2016 Nathan Carman's JC 31 Cruiser sank while operating within the cruising limits made part of the insurance contract referred to in paragraph 51 above, resulting in a total loss of the Defendant's boat.

53.     The sinking and loss of the JC 31 Cruiser was not the result of any actions by Defendant, Carman which he performed with the intent to damage or sink the boat, but rather the sinking and loss of the JC 31 Cruiser was the result of some accidental cause.

54.     Pursuant to the terms of the insurance contract referred to in paragraph 51 above, the accidental sinking and total loss of the JC 31 Cruiser triggered an obligation on the part of the Plaintiff, National Liability & Fire Insurance Company to pay to Defendant Carman, the Agreed Hull Value of $85,000 minus the applicable $1,700 deductible.

55.     In October 2016 the Defendant, Carmen, duly presented his claim for payment of the Agreed Hull Value to Plaintiff, National Liability & Fire Insurance Company.

56.     On January 27, 2017, Plaintiff, National Liability & Fire Insurance Company formally denied Defendant, Nathan Carman's claim and asserted that the insurance contract was retroactively cancelled effective, September 17, 2016.  Through this conduct, Plaintiff, National Liability & Fire Insurance Company breached the insurance contract causing damage to Defendant, Nathan Carman.

57.     The Plaintiff National Liability & Fire Insurance Co. is liable to Nathan Carman in an amount of $83,300.00 for breach of the insurance agreement together with pre-judgement interests, cost. and attorney's fees.

<u>COUNT II</u>

Breach of Sales and Insurance Contract

Nathan Carman vs. Boat Owners Association of the United States

58.     On December 17, 2016, Plaintiff, Boat Owners Association of the United States delivered to the Defendant, Nathan Carman, the "BoatU.S. Insurance Quotation" a copy of which is attached hereto as Exhibit "A".  Purchase of the insurance policy described in the "BoatU.S. Insurance Quotation" was contingent upon the Defendant Carman, becoming a "member" of Boat Owners Association of the United States and paying membership dues to BoatU.S.

59.     On December 21, 2016 Plaintiff, Boat Owners Association of the United States, delivered to the Defendant Nathan Carman, a correspondence attached hereto as Exhibit "B" in which it indicated that it was ready willing and able to sell to the Defendant, Nathan Carman, the "All Risks" "Agreed Hull Value" policy described in its December 17, 2016 "BoatU.S. Insurance Quotation".

60.     On December 21, 2016, Defendant, Nathan Carman, contacted Plaintiff, Boat Owners Association of the United States, accepted the Plaintiff's December 17, 2016 "BoatU.S. Insurance Quotation", became a "member" of Boat Owners Association of the United States, and paid to Boat Owners Association of the United States the required $24 membership fee and the required premium payment in accordance with the Defendant's installment premium payment plan.

61.     The conduct described in paragraphs 57 through 60 above created a legally enforceable contract between Plaintiff, Boat Owners Association of the United States and Defendant, Nathan Carman.  In consideration of Nathan Carman accepting the "BoatU.S. Insurance Quotation" and taking the actions described in paragraph 60 above, Plaintiff, Boat Owners Association of the United States agreed to sell to the Defendant, Nathan Carman, the "All Risk" "Agreed Hull Value" boat insurance policy described in the December 17, 2015 "BoatU.S. Insurance Quotation".

62.     Plaintiffs have alleged that Carmen purchased an insurance policy from NFLIC that contained material terms and exclusions that were inconsistent with "all risk" "Agreed Hull Value" policy described in the BoatUS quotation.  Plaintiff, Boat Owners Association of the United States, breached its agreement to sell to the Defendant the insurance policy describe in the December 17, 2015 "BoatU.S. Insurance Quotation".

63.     If and to the extent that the insurance policy actually sold to Defendant, Nathan Carmen, contains terms, conditions, and limitations less favorable than those described within the December 17, 2015 "BoatU.S. Insurance Quotation", then Defendant, Carmen has sustained compensable damages on account of Plaintiff's breach of this sales contract.

64.     Delivery of the December 21, 2015 "Marine Insurance Binder" issued by Plaintiff, Boat Owners Association of the United States and attached hereto as Exhibit "C" created an insurance contract between the Defendant, Nathan Carman, and Plaintiff, Boat Owners Association of the United States.

65.     The insurance contract created by the December 21, 2015 "Marine Insurance Binder" was never cancelled or replaced by a policy issued to Nathan Carman by National Liability & Fire Insurance Company and consequently the "Marine Insurance Binder" remained in full force and effect on September 18, 2016.

66.     On September 18, 2016 Nathan Carman's JC 31 Cruiser sank while operating within the cruising limits made part of the "Marine Insurance Binder" referred to in paragraph 64 above, resulting in a total loss of the Defendant's boat.

67.     The sinking and loss of Carman's recreational sports fishing boat was not the result of any actions by Defendant Carman intended to damage or sink the boat, but rather the sinking and loss of the JC 31 was the result of an accidental cause.

68.     Pursuant to the terms of the "Marine Insurance Binder" referred to in paragraph 64 above, the accidental sinking and total loss of the recreational sports fishing boat triggered an obligation on the part of the Plaintiff, Boat Owners Association of the United States, to pay to Defendant, Carman, the Agreed Hull Value of $85,000 minus the applicable $1,700 deductible.

69.     In October 2016 the Defendant, Carmen, duly presented his claim for payment to Plaintiff, Boat Owners Association of the United States.

70.     On January 27, 2017, Plaintiff, Boat Owners Association of the United States formally denied Defendant, Nathan Carman's claim.

71.     Defendant, Boat Owners Association of the United States is liable to Nathan Carman for breach of sales and/or insurance contract, in the amount of $83,300.00 along with interest, costs and attorney's fees.

<u>COUNT III</u>
Breach of Duty of Utmost Good Faith and Fair Dealing
In Connection with Marketing & Sale of Marine Insurance

72.     Pursuant to the General Maritime Law of the United States and supported by the insurance laws of the states with significant interests in this matter, the Plaintiffs, Boat Owners Association of the United States and National Liability and Fire Insurance Company had a duty of utmost good faith and fair dealings in connection with the communications, interactions and negotiations with Defendant Carman leading up to the purchase of the marine insurance agreement and/or policy that is the subject of this action.

73.     The Plaintiff's, Boat Owners Association of the United States and National Liability and Fire Insurance Company, breached their duty of utmost good faith and fair dealings in connection with the communications, interactions and negotiations with Defendant Carman

leading up to the purchase of the marine insurance agreement and/or policy that is the subject of this action.    The conduct giving rise to this breach includes, without limitation:

a.      Plaintiffs' purposeful misrepresentation of Boat Owners Association of the United States and/or BoatU.S. as a bona fide membership organization operated & controlled by and for the benefit of its recreational boat owning "members".

b.      Plaintiffs' failure to disclose to Defendant Carman that Boat Owners Association of the United States and/or BoatU.S. is a wholly owned and controlled subsidiary corporation of Berkshire Hathaway, Inc., which was operated for the primary purpose of marketing insurance policies underwritten and/or issued by other wholly owned subsidiary corporations of Berkshire Hathaway, Inc.

c.      Plaintiffs' purposeful use of "bait and switch" sales practices in connection with the sale of insurance products to Defendant Carman.

d.      Plaintiffs' purposeful concealment of the agent/principal relationship between the Plaintiff's.

74.      As a result of the Plaintiffs' breach of their duty of utmost good faith and fair dealing in connection with the sale of insurance products as described above, the Defendant Carman has sustained damages, including without limitation the loss of the insurance benefits bargained and paid for.

75.      As a remedy for the breach of the duty of utmost good faith and fair dealing in connection with the sale of insurance products this Court shall

a.      Reform the insurance contract/policy so as to conform to the terms and conditions bargained for at the time of sale.

b.      Estop the plaintiffs from enforcing any terms and conditions in the insurance

policy that were not disclosed to Defendant Carman, at or prior to the time the policy was

purchased.

c.      Enter Judgment against Boat Owners Association of the United States and

National Liability and Fire Insurance Company, Inc, jointly and severally and in favor of

Defendant, Nathan Carman, in the amount of $83,300.00 along with interest, costs and attorney's

fees.

d.      Enter Judgment for punitive damages recoverable under the General Maritime

Law against Boat Owners Association of the United States and National Liability and Fire

Insurance Company, Inc, jointly and severally and in favor of Defendant, Nathan Carman, in the

amount sufficient to deter the Plaintiffs and their controlling corporate parent, Berkshire

Hathaway, Inc. from engaging in these types of bad faith insurance practices in the future.

COUNT IV
Breach of Duty of Utmost Good Faith and Fair Dealing
In Connection with Marine Insurance Claims Settlement Practices

76.     Pursuant to the General Maritime Law of the United States the Plaintiffs, Boat Owners

Association of the United States and National Liability and Fire Insurance Company had a duty

of utmost good faith and fair dealings in connection with the claims handling and payment of

Defendant Carman's hull claim arising from the sinking of his recreational sports fishing boat.

77.     The Plaintiff's, Boat Owners Association of the United States and National Liability and

Fire Insurance Company, breached their duty of utmost good faith and fair dealings in

connection with the claims handling and denial of Defendant Carman's claim arising from the

sinking of his recreational sports fishing boat.   The conduct giving rise to this breach includes,

without limitation:

a.      Plaintiffs' knowing and purposeful refusal to pay a claim covered under the insurance agreement.

b.      Plaintiffs' knowing and purposeful refusal to pay Mr. Carman's claim on the basis of terms, conditions and limitations which are not part of the insurance agreement agreed to by the parties and paid for by Mr. Carman.

c.      Plaintiffs' knowing and purposeful refusal to pay Mr. Carman's claim on the basis of intentional misrepresentation of the terms, conditions and limitations of the insurance agreement agreed to by the parties and paid for by Mr. Carman.

d.      Plaintiffs' violation of applicable insurance claims handling laws and regulations of the States of Massachusetts, Vermont, Rhode Island and Connecticut.

78.   As a result of the Plaintiffs' breach of their duty of utmost good faith and fair dealing in connection with their handling and denial of Carman's claim as described above, the Defendant Carman has sustained damages, including without limitation the loss of the insurance benefits bargained and paid for, attorney's fees and costs and other damages which will be shown at trial.

79.   Plaintiffs, Boat Owners Association of the United States and National Liability and Fire Insurance Company are liable to the Defendant, Nathan Carman, for Punitive, treble and statutory damages against in favor of Defendant, Nathan Carman, in an amount sufficient to cover his attorney's fees and expenses and to deter the Plaintiffs and their controlling corporate parent, Berkshire Hathaway, Inc. from engaging in these types of bad faith insurance practices in the future, along with interest, costs and attorney's fees.

COUNT V
Breach of Duty of Utmost Good Faith and Fair Dealing
In Connection with Marketing & Sale of Consumer Insurance

80.     Pursuant to the laws of the States of Massachusetts, Rhode Island, Connecticut and

Vermont the Plaintiffs, Boat Owners Association of the United States and National Liability and

Fire Insurance Company had a duty to refrain from using unfair and deceptive acts and practices

in connection with the communications, interactions and negotiations with Defendant Carman

leading up to the purchase of the insurance agreement and/or policy that is the subject of this

action.

81.     The Plaintiff's, Boat Owners Association of the United States and National Liability and

Fire Insurance Company, breached their duty to refrain from using unfair and deceptive acts and

practices in connection with the communications, interactions and negotiations with Defendant

Carman leading up to the purchase of the insurance agreement and/or policy.    The conduct

giving rise to this breach includes, without limitation:

        a.      Plaintiffs' purposeful misrepresentation of Boat Owners Association of the United

States and/or BoatU.S. as a membership organization operated & controlled by and for the

benefit of its recreational boat owning "members".

        b.      Plaintiffs' failure to disclose to Defendant Carman that Boat Owners Association

of the United States and/or BoatU.S. is a wholly owned and controlled subsidiary corporation of

Berkshire Hathaway, Inc., which was operated for the primary purpose of marketing insurance

policies underwritten and/or issued by other wholly owned subsidiary corporations of Berkshire

Hathaway, Inc.

        c.      Plaintiffs' purposeful use of "bait and switch" sales practices in connection with

the sale of insurance products to Defendant Carman.

        d.      Plaintiffs' purposeful failure to disclose the agent/principal relationship between

the Plaintiffs.

20

82.     As a result of the Plaintiffs' breach of their duty of utmost good faith and fair dealing in connection with the sale of insurance products as described above, the Defendant Carman has sustained damages, including without limitation the loss of the insurance benefits bargained and paid for.

83.     As a remedy for Plaintiffs breach of their duty of utmost good faith and fair dealing the Court shall

        a.      Reform the insurance contract/policy so as to conform to the terms and conditions bargained for at the time of sale.

        b.      Estop the plaintiffs from enforcing any terms and conditions in the insurance policy that were not disclosed to Defendant Carman, at or prior to the time the policy was purchased.

        c.      Enter Judgment against Boat Owners Association of the United States and National Liability and Fire Insurance Company, Inc, jointly and severally and in favor of Defendant, Nathan Carman, in the amount of $83,300.00 along with interest, costs and attorney's fees.

        d.      Enter Judgment for punitive damages recoverable under the General Maritime Law against Boat Owners Association of the United States and National Liability and Fire Insurance Company, Inc, jointly and severally and in favor of Defendant, Nathan Carman, in the amount sufficient to deter the Plaintiffs and their corporate parent, Berkshire Hathaway, Inc. from engaging in these types of bad faith practices in the future.

COUNT VI
Unfair and Deceptive Claims Settlement Practices

84.     Pursuant to the laws of the states of Massachusetts, Vermont, Rhode Island and/or Connecticut the Plaintiffs, Boat Owners Association of the United States and National Liability

21

and Fire Insurance Company had a duty to exercise good faith and fair dealings, and to comply with applicable laws of Massachusetts, Vermont, Rhode Island and/or Connecticut in connection with the claims handling and payment of Defendant Carman's claim arising from the sinking of his sports fishing boat.

85.     The Plaintiff's, Boat Owners Association of the United States and National Liability and Fire Insurance Company, breached their duty to exercise good faith and fair dealings, and to comply with applicable laws of Massachusetts, Vermont, Rhode Island and/or Connecticut in connection with the claims handling and payment of Defendant Carman's claim arising from the sinking of his JC 32 Cruiser.   The conduct giving rise to this breach includes, without limitation:

a.     Plaintiffs' knowing and purposeful refusal to pay a claim covered under the insurance agreement.

b.     Plaintiffs' knowing and purposeful refusal to pay Mr. Carman's claim on the basis of terms, conditions and limitations which are not part of the insurance agreement agreed to by the parties and paid for by Mr. Carman.

c.     Plaintiffs' knowing and purposeful refusal to pay Mr. Carman's claim on the basis of intentional misrepresentation of the terms, conditions and limitations of the insurance agreement agreed to by the parties and paid for by Mr. Carman.

d.     Plaintiffs' violation of applicable insurance claims handling laws and regulations of the States of Massachusetts, Vermont, Rhode Island and Connecticut.

86.     As a result of the Plaintiffs' breach of their duty to exercise good faith and fair dealings, and to comply with applicable laws of Massachusetts, Vermont, Rhode Island and/or Connecticut in connection with the claims handling and payment of Defendant Carman's claim, the Defendant Carman has sustained damages, including without limitation the loss of the

insurance benefits bargained and paid for, attorneys fees and costs and other damages which will be shown at trial.

87.     Plaintiffs are liable to Carman for Punitive, treble and statutory damages under the applicable law of the States of Massachusetts, Rhode Island, Vermont and Connecticut, against Plaintiff, Boat Owners Association of the United States and National Liability and Fire Insurance Company and in favor of Defendant, Nathan Carman, in an amount to be determined by the Court along with interest, costs and attorney's fees.

> Respectfully Submitted
> On behalf of the Defendant,
> Nathan Carman
>
>
> /s/ David F. Anderson
> David F. Anderson
> Latti & Anderson LLP
> 30 Union Wharf
> Boston, MA 02109
> (617) 523-1000
> DAnderson@LattiAnderson.com

Dated: July 17, 2019

CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that on the above date, I electronically filed the above pleading with the Clerk of the Court using CM/ECF system which will send notification of such filing(s) to all counsel of record for all parties.

> /s/David F. Anderson
> David F. Anderson

# EXHIBIT "A"

## "BoatU.S. Insurance Quotation"

National Liability & Fire Insurance Co., et al vs. Nathan Carman
C.A. No. 17-cv-0038-S-PAS

**BoatU.S.**

**COMPANION PROGRAM**

# BoatU.S.

## INSURANCE QUOTATION

**1-800-283-2883**
***TENTATIVE***

NATHAN CARMAN
3043 FORT BRIDGMAN RD
VERNON          VT 05354-9451

Date:_____12/17/2015_____
Boat:_____1973  31' JC_____
Member No._SEE ATTACHED_
App. No.: _3985989-02/  1561_

| Application No.: 3985989 | Coverages | Deductibles |
|---|---|---|
| Boat and Boating Equipment (Agreed Hull Value) . . . . . . . . . . . . . . . . . . . | $ 66,200 | $ 1,324 |
| If 'Named Storm' Loss | | $ |
| If Theft Loss | | $ 1,324 |
| Elected Coverage - If Dinghy Loss | | $ |
| Elected Coverage - If Electronics Loss | | $ 100 |
| Boating Liability (Protection and Indemnity): | | |
| Property Damage/Bodily Injury . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 300,000 | |
| Fuel and Other Spill Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 854,400 | |
| Medical Payments - Limit Per Person Each Accident . . . . . . . . . . . . . . . . | $ 10,000 | |
| Supplemental Family Member - Limit Per Person, Each Accident . . . . . . . . . . | $ 25,000 | |
| Boat Trailer (Agreed Value) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | |
| Personal Effects . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 2,500 | $ 50 |
| Uninsured Boater Protection - Limit Each Accident . . . . . . . . . . . . . . . . . | $ 300,000 | |
| Commercial Towing Assistance - Each Incident/Annual Limit . . . . . . . . . | $ 250/500 | |
| TOTAL PREMIUM | $ 1,734.44 | |
| *No Loss Credit* | $ 173.44 | |
| Premier Package included          NET ANNUAL PREMIUM | $ 1,561.00 | |

Cruising Limits: (There is no coverage outside of this area without Company's prior written permission.)
  Atlantic coastal and inland waters tributary thereto of the U.S. and Canada between St. John, New Brunswick and Jacksonville, Florida, inclusive.

Navigation Period: 12 months. Premium includes credit for Lay-Up Period normal to your area.
Policy Type "All Risk" (Subject to policy limits, warranties and exclusions.)

Company:          NATIONAL LIABILITY & FIRE INSURANCE COMPANY

Depreciation May Apply to Some Partial Losses.
**See Reverse Side for Acceptance Procedures, Special Conditions and Claims Handling.**
**Special Conditions and Options Relating to Your Quotation Appear on Attached Page and/or Application.**

**TOWING PROTECTION WITH MEMBERSHIP**
BoatU.S. Membership automatically includes 24 hour dispatch of assistance on the water. Unlimited
Towing Service from TowBoatU.S. and Vessel Assist Fleets is a membership option (see enclosure).

**You may change your Membership, higher towing options and/or boat insurance by calling 1-800-283-2883.**

**BOAT OWNERS ASSOCIATION of THE UNITED STATES**
Washington National Headquarters, 880 South Pickett Street, Alexandria, Virginia 22304

BoatU.S. Insurance Program

# QUOTATION REPLY FORM

| | |
|---|---|
| **Insure my boat/watercraft in accordance with BoatU.S. quotation effective (date)** _____<br><br>Boat/Watercraft Name_____<br>Normally<br>Stored At _____<br>Marina - City and / or Waterway - State - Zip<br>I am enclosing:<br>☐  Total Premium<br>Or<br>☐  30% Down Payment (For premium up to $800, you will be billed in 4 equal monthly installments. For premium over $800, you will be billed in 8 equal monthly installments. An installment fee will be included in each payment.)<br>**INSURANCE TOTAL** $ _____ | **BoatU.S. Insurance is available to Members only. If you have not yet joined, please review and complete the enclosed application. You may also join by phone with credit card or by electronic funds (EFT).** |

**DO NOT COMPLETE THIS PORTION IF YOU HAVE PREVIOUSLY CHARGED THE AMOUNT BY PHONE.**

Please charge this amount $ _____     VISA ☐     MasterCard ☐     Discover ☐     Amex ☐

Signature _____ Exp. Date _____ Credit Card No._____

*Please detach the above Reply Form and return in enclosed envelope. Thank you.*

## ABOUT LOSS-FREE CREDITS

Our Insurance Program grants a No Loss Credit to Member policyholders whose boating record is claims-free. If you had no claims, you will note in the quotation on the front that credit has been applied.  The credit will remain in effect for each subsequent year of coverage in which there are no claims made under your policy.  If a claim should be made, the credit would be deleted on the renewal and the premium increased accordingly.  If you have had a previous claim, the credit has not been applied. It will, however, be applied next year to reduce subsequent premiums if your experience is free of claims.

## ACCEPTANCE PROCEDURES and CONDITIONS
### 1-800-283-2883

To accept the quotation and obtain insurance under the BoatU.S. Insurance Program please complete the detachable *Reply Form* above and mail it with your check for the insurance premium along with the requirements outlined under the Special Conditions section of this quote. Please note that receipt and deposit of your premium by BoatU.S. does not automatically make your coverage effective. It will become effective only after this office has received and approved the material or information requested under Special Conditions. If there are no Special Conditions, your insurance can be made effective as early as the day following the Post Office cancellation date on your acceptance and premium payment or, if the envelope is metered or otherwise not cancelled, upon receipt by BoatU.S. Specify on approval of any Special Conditions, and, of course, payment of your Membership dues.

Our regular business hours are Monday - Friday 8:00 A.M. to 9:00 P.M. EST, Saturday 9:00 A.M. to 5:00 P.M. EST.

*This quotation will be valid for 60 days from its date, unless a hurricane or other storm threatens the area in which your boat is located. Under these conditions insurance will be effective after the heavy weather has passed.*

### In the Event of a Loss, Call BoatU.S. Claims 7 Days a Week
### 1-800-937-1937

After taking emergency steps to assist people with injuries and to protect the boat from further damage, the insured Member should place a toll free call to the BoatU.S. Insurance Claims Department. Our Claims specialists will give initial instructions for further action, immediately contact a BoatU.S. approved surveyor or adjuster in the local area if needed, and get the paperwork underway. Our Members have found that coordination of the claim process by BoatU.S. greatly simplifies an otherwise  complex and difficult situation, while the use of a local surveyor adds the convenience of having a person on the scene.

# BOAT OWNERS ASSOCIATION of THE UNITED STATES
Washington National Headquarters, 880 South Pickett Street, Alexandria, Virginia 22304

# EXHIBIT "B"

## "BoatU.S. Correspondence dated December 21, 2015"

National Liability & Fire Insurance Co., et al vs. Nathan Carman
C.A. No. 17-cv-0038-S-PAS



**Marine Insurance**
880 South Pickett Street
Alexandria, VA 22304
Boat Insurance: 800-283-2883
Claim: 800-937-1937
Fax: 703-461-2840

December 21, 2015

93984860
NATHAN CARMAN
3043 FORT BRIDGMAN RD
VERNON VT 05354-9451


RE: Quotation#: 3985989 02
1974 JC 31'


Dear Boat Owner:

We have received the survey of your boat that the insurance company
required as a condition of coverage, and we are pleased to advise you
that the survey has been approved under the company's standards. If you
haven't already started coverage and wish to put coverage into effect,
simply mail in the premium amount quoted, $1561, or at least 30% down
payment, and your desired effective date.

The survey you submitted was reviewed as a part of our Loss Prevention
Program in an effort to eliminate potentially dangerous situations
aboard. The Insurance Company will need to know your plans and
timetable for taking care of the recommendations within 30 days after
coverage is initiated. We have included a reply form for your
convenience.

We hope that you find this information helpful, and we would be happy to
provide you with any further explanation regarding the hazards presented
by any particular recommendation you might question. Should you need
immediate coverage, just call our office at 1-800-283-2883 and we will
be happy to bind coverage for you over the phone. If you wish, the
insurance premium and any towing upgrades desired can be charged to a
credit card at that time. We look forward to serving your insurance
needs and if you have any questions, please let us know.


                                    Sincerely Yours,



                                    Richard J. Grandinetta
                                    Marine Insurance Division


Enclosure(s)

S05$RECS/165

# EXHIBIT "C"

## "Marine Insurance Binder"

National Liability & Fire Insurance Co., et al vs. Nathan Carman
C.A. No. 17-cv-0038-S-PAS

# MARINE INSURANCE BINDER

593
Binder No.

3985989/02

**THIS BINDER IS A TEMPORARY INSURANCE CONTRACT, SUBJECT
TO THE CONDITIONS SHOWN ON THE REVERSE SIDE OF THIS FORM.**

**Name and address of agency**

BoatU.S.
880 South Pickett Street
Alexandria, Virginia 22304

**Company**
National Liability & Fire Insurance Compa

| | | |
|---|---|---|
| Effective | 12:01 am | Dec 22, 2015 |
| Expires | 12:01 am | Dec 22, 2016 |

**Name and mailing address of insured**

NATHAN CARMAN
3043 FORT BRIDGMAN RD
VERNON VT 05354-9451

**Description of Vessel**

1974 JC 31'
HULL ID: MSZMT502J303

THIS IS AN AGREED HULL VALUE POLICY

**PROPERTY**

| Type and Location of Property | Coverage/Perils/Forms | Amt. of Insurance | Deductible |
|---|---|---|---|
| See above description | Boat & Boating Equipment | 66,200 | 1,324 |
| | Towing - Incident/Annual | 250/500 | |
| | Personal Effects | 2,500 | 50 |

**LIABILITY**

| Type of Insurance | Coverage/Forms | Limits of Liability |
|---|---|---|
| [X] Comprehensive Form | | Bodily Injury and Property Damage Combined (Each Person) |
| Per Person    Per Accident | | |
| [X] Fuel Spill            $854,400 | | |
| [X] Med. Pay   $10,000 | | Bodily Injury and Property Damage Combined (Each Accident) |
| [X] Uninsured Boater       $300,000 | | $300,000 |
| [X] Longshore and Harbor Worker's Compensation   STATUTORY | | |

**CRUISING LIMITS (There is no coverage outside of this area without the Company's prior written permission.)**

Atlantic coastal and inland waters tributary thereto of the U.S. and
Canada between St. John, New Brunswick and Jacksonville, Florida,
inclusive.

**SPECIAL CONDITIONS/OTHER COVERAGES**

Both, the Insurance Application (to be completed and signed by the insured) and Special Conditions on the
back of the form (if any) must be completed within 30 days of the effective date or coverage will be canceled.
A package of valuable extras for one low price including $10,000 per incident Medical Limits, $2,500 in
Personal Effects Coverage, a lowered Electronics Deductible (to $100), and Ice and Freezing coverage is
included.

NAME AND ADDRESS OF    [ ] LOSS PAYEE    [ ] ADD'L INSURED

LOAN #:

Richard J. Grandinetta

*Richard J. Grandinetta*

Signature of Authorized Representative   12/21/2015

## CONDITIONS

This Company binds the Marine Insurance stipulated on the reverse side.  This insurance is subject to the terms, conditions, limitations and exclusions of the policy(ies) in current use by the Company.

This binder may be cancelled by the Insured by surrender of this binder or by written notice to the Company stating when cancellation will be effective.  This binder may be cancelled by the Company by notice to the Insured in accordance with the policy conditions.  This binder is cancelled when replaced by a policy.  If this binder is not replaced by a policy, the Company is entitled to charge a premium for the binder according to the Rules and Rates in use by the Company.

## APPLICABLE IN NEVADA

Any person who refuses to accept a binder which provides coverage of less than $1,000,000.00 when proof is required: (A) Shall be fined not more than $500.00, and (B) is liable to the party representing the binder as proof of insurance for actual damages sustained therefrom.

**\* THIS BINDER CANCELS AND REPLACES ALL PREVIOUS BINDERS \***