|  |  |
|---|---|
| NATIONAL LIABILITY & FIRE INSURANCE CO. and BOAT OWNERS ASSOCIATION OF OF THE UNITED STATES<br>　　Plaintiffs<br><br>v.<br><br>NATHAN CARMAN<br>　　Defendant. | Civil Action:<br>No: 17-cv-0038-S-PAS<br><br>In Admiralty |

## DEFENDANT'S F.R.Civ.P. 52 MOTION TO AMEND FINDINGS AND TO MAKE ADDITIONAL FINDINGS and REQUEST FOR A HEARING

Now comes the Defendant, Nathan Carman, and pursuant to F.R.Civ.P. 52(b) & 52(c) respectfully requests that this Honorable Court amend its Findings of Fact and Conclusions of Law [Doc. #177] dated November 4. 2019 and further requests that this Honorable Court make additional findings of fact as set forth below. Defendant further requests that this Honorable Court hear oral arguments on this motion.

Within this Motion the Defendant will refer to the Court's findings and conclusions by paragraph numbers contained within the Court's November 4, 2019 Findings of Fact and Conclusions of Law [Doc. #177]. There are two paragraph 21, one under the heading *Findings of Fact* and one below the heading *Conclusions of Law*. The same is true for paragraphs 22, 23 and 24. Defendant will distinguish these duplicates by including the heading they are under. Section I below identifies the amendments to existing findings which the Defendant is requesting. Section II below identifies the additional facts which the Defendant requests that the Court find.

1

## I. REQUESTED AMENDMENTS

Paragraph 5

Defendant requests that the Court strike the second as well as the 3rd and 4th sentences in paragraph 5 as it is not supported by the credible evidence in this case. On cross examination Mr. Woods agreed that he installed the trim tabs after longitudinal and perpendicular stringers as well as the deck was installed and that it would have been impossible to have installed the hydraulic lines for the trim tabs as he testified to on direct. On cross examination Mr. Woods identified at least three possible ways he could have installed the trim tabs & lines after the stringers and deck were laid but testified that he did not have a present memory of how exactly how he installed the hydraulic lines for the trim tabs. Simply stated, Mr. Woods specifically and unequivocally recanted the testimony upon which the 2nd sentence appears to be based. In light of Mr. Woods lack of memory the 3rd and 4th sentences of paragraph 5 are not supported by the credible evidence.

Paragraph 11

Defendant requests that the Court Strike the first sentence in paragraph 11 on the basis that this finding is not supported by any admissible credible evidence. Defendant further requests that this sentence be stricken because it is against the great weight of the evidence in this case, in particular Defendant's Exhibits # 5, #29[1], #47, & #50 which were introduced as impeachment evidence in response to the introduction (over Defendant's objection) of Pl's Ex. # 25.3. Exhibit 5, is a paper copy of an e-mail & attachment sent by counsel for the Plaintiffs to counsel for the Defendant in which counsel identifies the attachment as being "a certified copy

---

[1] Defendant's Exhibit 29 is a flash drive that contains e-mails from Plaintiffs (in original digital format) containing versions of Mr. Carman's policy that are different in both form and substance than Defendant's Exhibit # 25.3

of Mr. Carman's BoatU.S. Yacht Policy with all endorsements". The digital original of Ex. 5 is contained within Def Ex. 29. The "certified" policy contained within Def's Ex. #5 is different in both form and substance from the policy introduced during Mr. Pellarin's testimony as Plaintiff's Ex. # 25.3. At trial Mr. Pellerin testified that he not an employee of either of the Defendants, but rather was an employee of a third (non- party) Berkshire Hathaway subsidiary and that he was not the keeper of the record for either Defendant and had no personal knowledge of any mailing of the policy or of the authenticity of Ex. 25.3. Mr. Pellarin testified that he believed Exhibit 25.3 was a copy of a policy mailed to Mr. Carman exclusively on the basis of hearsay statements contained within strings of e-mails from an employee of a fourth (non-party) company, to an employee of Mr. Pellarin's company which was then forwarded on to him. The Plaintiffs offered no evidence to explain or resolve the inconsistency between Plaintiff's Ex. 25.3 and the "certified copy" of the policy produced by counsel for the Plaintiffs during litigation or the copy forwarded to Mr. Carman by Boats prior to litigation (Def. Ex. 47).

Defendant claims that an insurance policy (defined as a legally enforceable agreement/contract as opposed to a tangible stack of papers) covering his vessel existed at the time of the sinking, however he asserts that Plaintiff failed to prove that a tangible policy (paper or digital format) was ever sent to Mr. Carman and failed to prove the existence of any exclusions other than those contained within the Binder or the Declaration Page. To the extent that references to "the policy" in subsequent paragraphs refers to the Policy marked as Exhibit 25.3, then Defendant moves to strike these references on the basis set forth above.

Paragraph 12

The Defendant requests that the Court strike the second, third and fourth sentence of paragraph 12 as they are not supported by any evidence in this case. There was absolutely no

evidence at trial of any communications whatsoever between Carman and Plaintiff National Liability. All communications and financial transactions where between Boats and Mr. Carman including the payment of the monthly premium and the payment of the prior claim. All parties agree that Mr. Carman's vessel was insured, the issue in dispute was the precise terms of the insurance agreement including any exclusions. The fact that Carman paid the premium each month, increased his insurance and/or made a claim is consistent with his vessel being insured, however these acts are not probative of whether a tangible policy was ever sent and if it was whether it was the "certified copy" sent by Mr. Farrell (Ex. D-5), Plaintiff's Exhibit 25.3, some other paper or electronic document or whether a tangible paper or electronic policy was ever created or sent.

Paragraph 13

The Defendant requests that the Court strike Paragraph 13 on the basis that it is not supported by any admissible evidence. There was no evidence of any communications between Mr. Carman and Defendant National Liability. There was no evidence of any information made available by National liability, by phone, by e-mail, by letter or by website. To the extent that the Court is referring to information made available by BoatUS as agent for National liability, then it should be noted that the e-mail from BoatUS introduced as Exhibit D-47 and the information regarding Mr. Carman's policy as published on the BoatUS website is inconsistent with exhibit 25.3 being a copy of the policy sold or sent to Mr. Carman.

Paragraph 14

The Defendant request that the Court strike paragraph 14 on the basis that it is not supported by any admissible evidence. The term "Exclusion D" is not contained in any of the versions of the policy introduced at trial including Ex. 25.3. The language quoted by the Court

in Paragraph 14 appears on the "Certified Copy" (Ex. D-5) and the copy of the policy sent to Carman by BoatUS (Ex. D-47) however it appears on the page preceding the list of exclusions and there is nothing in the language of these policies that identifies it as an exclusion.

Paragraph 16

The Defendant request that the Court Strike Paragraph 16 as it is not supported by any credible evidence at trial. This evidence is contrary to the testimony of Mr. Carman. The only evidence supporting this finding is the direct testimony of Mr. Woods in which he described how he installed the trim tabs. However, on cross examination Mr. Woods retracted this testimony, and stated that he had no present memory of exactly how he installed the hydraulic lines. While the Court is entitled to draw reasonable inferences, those inferences cannot be based upon a witnesses conjecture or guess.

Paragraph 19

The Defendant request that the Court Strike Paragraph 19 as it is not supported by credible admissible evidence. The evidence established that the oil in the bilge occurred prior to early September 2016. At trial a Point Judith mechanic testified that he thought the bilge pump did not work due to an electrical problem not "a continuing electrical problem with the port bilge pump". There was no evidence at trial that the 2nd (aft) bilge pump was not functioning properly at any time. There was no evidence introduced at trial that after Carman replaced the bilge pump (with a new bilge pump) the day before the sinking that it was not functioning properly.

Footnote 4 on Page 8

The Defendant requests that the Court strike Footnote 4 on page 8 as it is not support by the admissible evidence. There was no admissible evidence of any policy being mailed to Mr.

Carman. There was no evidence that the policy was formed in Vermont. The evidence at trail establishes the center of gravity of the policy was in Rhode Island.

Conclusion of Law Paragraph 24

The Defendant request that the Court strike Conclusion of Law Paragraph 24. For reasons discussed above the Plaintiffs failed to introduce admissible evidence regarding the exclusions within the policy. The term "repair" is ambiguous as reasonable persons could interpret as being limited exclusively to fixing something that broke, or could interpret the word broadly to include other alterations to the vessel.

Paragraph 26

The Defendant request that the Court strike paragraph 26 because for reasons discussed above, there was no admissible evidence supporting the claim that the language referred to as "Exclusion D" was an exclusion. Defendant further request paragraph 26 be stricken because the removal of the bulkheads was not a "repair" as the term is used in normal speech. Under a narrow (but reasonable) interpretation of the term "repair", removal of the trim tabs and filling the holes with epoxy putty was not a repair.

Paragraph 26(a)

The Defendant request that the Court strike paragraph 26(a) on the grounds that removing the trim tabs was not a "repair". The Defendant requests that the last sentence in Paragraph 26(a) be stricken because as to causation it is not supported by any admissible and credible evidence. While there was evidence from which the Court could infer that the water passed through the trim tab holes into the hull, there was no evidence of the rate in which the water entered, the rate any water was pumped overboard by one or both of the vessel's two bilge pumps. Similarly there was no evidence regarding the amount of water in the bilge required to render the vessel

6

unstable and/or to sink. Plaintiff failed to meet its burden of proving causation in connection with the trim tab holes in the stern.

Paragraph 26(b)

The Defendant moves to strike the third and fourth sentence in Paragraph 26(b) as it is not supported by any evidence in this case. While there as a dispute of fact as to whether the inboard sides of the bulkhead were sealed with 3M 5200 to the sides of the fish box, all of the evidence at trial established that the edge of the bulkhead adjacent to the deck was not watertight. Accordingly if water continually entered vessel below the deck it would eventually enter the two forward compartments. Further there was no evidence at trial support the Court's finding that the absence of a bulkhead had any impact on the rate of flooding. There was evidence at trial that any air pocket below deck (including a basketball) would decrease the speed in which the vessel would sink to the bottom, however this is unrelated to and does not support the Court's finding regarding the rate of flooding.

Paragraph 27

The Defendant moves to strike paragraph 27 in part because it is unclear whether this paragraphs refers to the preceding paragraph 26, 26(a) and 26(b) or all facts and conclusions and because it is not supported by the evidence introduced in this case. While it was true that Defendant was unable to establish the cause of the sinking on a more likely than not basis, Plaintiff has the burden of establishing on a more likely than not basis that the cause of the sinking was within an exclusion.

Paragraphs 28-30

The Defendant moves to strike paragraph 28-30 as it is not supported by the admissible evidence in this case and for reasons discussed above.

Paragraph 31

The Defendant moves to strike paragraph 31as it incorrectly summarizes Defendant's counterclaim Count II. Count II is being asserted against Plaintiff Boat Owners Association of the United States NOT Plaintiff National Liability.

Paragraph 33

The Defendant moves to strike paragraph 33 as it is not supported by the admissible evidence in this case and for reasons discussed above.

Paragraph 34

The Defendant moves to strike Paragraph 34 on the basis that it is not supported by the admissible credible evidence and also because dismissal of Counterclaim Count II does not logically follow from dismissal of Counterclaim Count I. The gist of Counterclaim Count II is that Defendant Boat Owners agreed to provide Carman with an insurance policy with a specific set of benefits, that Carman paid money to Boat Owners and that Boat Owners failed to provide him with the agreed policy.

Paragraph 35-37

The Defendant moves to strike Paragraphs 35-37 on the basis that it is not supported by the evidence in this case and also because it mischaracterizes the claims asserted in Defendant's Counterclaims Counts III and IV as relating to Plaintiffs claims handling conduct. Defendant's Counterclaims Counts III and IV allege misconduct on the part of the Plaintiffs in connection with marketing and sales of his marine insurance policy, not bad faith claims handling.

## II. Request for Additional Findings of Fact.

The Defendant requests that this Court find the facts set forth in paragraphs 1 through 86 (inclusive) on page 10 through 31 of <u>Defendants Amended Answer and Counterclaim</u> filed with this Court as Docket # 12 [Doc. #12].

The Defendant request that this Court find that the Plaintiff's failed to establish the terms of any exclusions to the "all risk" marine insurance policy covering Mr. Carmen's vessel.

The Defendant request that this Court find that the Plaintiff failed to establish on a more likely than not basis the cause or causes of the sinking of Mr. Carman's vessel.

The Defendant request that this Court find that the sinking and loss of Mr. Carman's vessel was covered by the "all risk" marine insurance policy covering Mr. Carman's vessel and that he is entitled to Judgment against the Plaintiffs in the amount of $83,500.

The Defendant request that this Court find that the sinking and loss of Mr. Carman's vessel in September of 2016 was covered by his insurance policy and enter judgement against the Plaintiff's on all claims at issue in this bifurcated trial.

Respectfully Submitted
On behalf of the Defendant,
Nathan Carman

/s/ David F. Anderson
David F. Anderson
Latti & Anderson LLP
30 Union Wharf
Boston, MA 02109
(617) 523-1000
DAnderson@LattiAnderson.com

And local counsel

/s/ Richard S. Humphrey
Richard S. Humphrey

Law Office of Richard S. Humphrey
3852 Main Road
Tiverton, RI 02878
richardhumphrey@richardhumphreylaw.com

Dated: December 2, 2019

CERTIFICATE OF ELECTRONIC SERVICE

       I hereby certify that on the above date, I electronically filed the above pleading with the Clerk of the Court using CM/ECF system which will send notification of such filing(s) to all counsel of record for all parties.

                                              /s/David F. Anderson
                                              David F. Anderson